### HENDERSON v. TOMPKINS.

(Circuit Court, D. Massachusetts. March 21, 1894.)

No. 3,104.

1. COPYRIGHT—JUDICIAL KNOWLEDGE AS TO ORIGINALITY.
   In a suit for infringement of copyright in a dramatic composition, the court will rarely interpose its judicial knowledge to the extent of finding on demurrer against the allegations of the bill touching questions of originality.

2. SAME—ALLEGATION OF AUTHORSHIP.
   A bill for infringement of copyright alleged that complainant was the proprietor of a certain dramatic composition "written or composed" by citizens of the United States. Held, on demurrer, a sufficient allegation of authorship, in the absence of specific exception.

3. SUBJECTS OF COPYRIGHT.
   The introduction, skeleton, and chorus of a "topical song,"—part of a dramatic composition,—though designed merely to amuse, though possessing little literary merit or originality, may be subject to copyright, if of value for the purposes for which they were designed.

In Equity. On demurrer to bill.
The bill of complaint was as follows:

David Henderson, of Chicago, in the state of Illinois, a citizen of the United States, brings this, his bill of complaint, against Eugene Tompkins, of Boston, in the state of Massachusetts, a citizen of the United States; and thereupon

your orator complains, and says: (1) That your orator, being the proprietor of a certain dramatic composition entitled "Ali Baba, or Morgiana and the Forty Thieves," written or composed by citizens of the United States, did, on or before the date of publication in this or any foreign country, viz. upon the 23d day of April, 1892, deliver at the office of the librarian of congress a printed copy of the title of the said composition, and received from said librarian a certificate of such deposit, hereunto annexed, and also did, not later than the date of the publication thereof in this or any foreign country, viz. upon the said 23d day of April, 1892, deliver at the office of the librarian of congress two copies of said dramatic composition, and received from the said librarian a certificate of said deposit, also hereto annexed, whereby the same became duly copyrighted. (2) That a part of said dramatic composition was as follows: "Cassim (scornfully): But Ali Baba's election is certain. Nico: I know it. Arraby: How do you know? Hack: She had a dream last night. Caliph (coming down stage): I wonder if dreams come true." And that the said dialogue was then immediately followed by a song entitled, "Quartette for Ali Baba: I Wonder if Dreams Come True," consisting of a number of verses of eight lines, in each of which the second, fourth, and eighth lines consist of the refrain, "I wonder if dreams come true," and the chorus after each verse is as follows: "Hi diddle diddle, the cat and fiddle, the parrot and monkey too. Bells they are ringing, there's fighting and singing, I wonder if dreams come true;" and that of each of the said verses, all except the second, fourth, and eighth lines aforesaid, were of a so-called "topical" nature (that is to say, relating to topics of current interest), and that the matter of the said topical lines was intended to be changed or varied from time to time to introduce allusions to new topics, the whole constituting what is known as the topical song, "I Wonder if Dreams Come True." (3) That the said song, so introduced by dialogue, forms an important and valuable part of the said dramatic composition, "Ali Baba," and constitutes one of the principal features of interest therein, and that the sole and exclusive right of publicly performing or representing the same is of great value to your orator. (4) That the defendant herein, well knowing the foregoing, and after the recording of the title of the said dramatic composition, and within the term of copyright therefor limited, and without the consent of your orator first obtained in writing, and signed in the presence of two or more witnesses, did publicly perform and represent, and is now so publicly performing and representing at the Boston Theater in said Boston, a certain dramatic composition, whereof a substantial and material and important portion consists of a dialogue between various characters in relation to having had a dream, the said dialogue terminating with a speech by one of said characters, as follows, "I wonder if dreams come true," which said speech is immediately followed by a topical song of a number of verses of eight lines each, the second, fourth, and eighth of which consist of the words or refrain, "I wonder if dreams come true:" that each of said verses is followed by the chorus of your orator's said song, and that the remainder of the lines in each verse are topical in character, and in substantial imitation of the said topical portions of your orator's said copyrighted song; and that the said performance and representation by the defendant of the said dialogue and the said song are a substantial and material infringement upon your orator's said exclusive right of publicly performing or representing the same. (5) And that by reason of the performance as aforesaid by the defendant of said dialogue and topical song in said Boston, in advance of the performance by your orator there of his said copyrighted composition and song, the same is made and becomes familiar and stale to the public, and thereby the attractiveness and value of your orator's said composition, subsequently to be produced by him in said Boston, have been and will be greatly reduced and impaired; and your orator is further informed and believes and charges that the defendant proposes to continue his said performance in other places, and throughout other parts of the United States, in advance of your orator's production of his copyrighted composition therein, to the great and continuing injury of your orator's rights in the premises. Wherefore, your orator prays that the said defendant may be required to answer the premises under oath, and may be decreed to ac-

count for and pay over unto your orator all gains and profits by the said defendant realized from his said infringement, and also the damage which your orator has sustained thereby, and that he may be restrained by an injunction of this honorable court from publicly performing or representing, or causing or permitting to be publicly performed or represented, any dramatic composition embodying, in whole or in part, any substantial or material portion of your orator's said copyrighted composition, and that he may be similarly enjoined pending this suit. And, to the end that your orator may have such relief, may it please your honors to grant to your orator writs of injunction conformable to the prayer of this bill, and also a writ of subpoena to be directed to the said Eugene Tompkins, commanding him, at a certain time, and under a certain penalty therein to be limited, personally to be and appear before this honorable court, then and there to answer to this bill, and to do and receive what to your honors shall seem meet.

Defendant demurred to the bill of complaint in form as follows:

The defendant, by protestation, not confessing or acknowledging all or any of the matters or things in the said bill of complaint contained to be true in such manner and form as the same are herein set forth and alleged, doth demur to the said bill, and for causes of demurrer showeth: (1) That it appeareth by the plaintiff's own showing, by the said bill, that he is not entitled to the relief prayed by the bill against the defendant. (2) That, in particular, it appears by the plaintiff's own showing, by the said bill, that the matter which he has alleged therein as protected by the copyright laws of the United States, and as having been infringed by the defendant, is matter which does not, and does not tend to, promote the progress of science and useful arts, or either of them, and is not within the scope of the power granted to congress by the constitution of the United States, to promote the progress of science and useful arts, by securing, for limited times, to authors and inventors, the exclusive right to their inventions and discoveries. (3) That, in particular, it appears by the plaintiff's own showing, by the said bill, that the matter which he has alleged therein as protected by the copyright laws of the United States, and as having been infringed by the defendant, is not, and was not at the time of the deposit of the title of said alleged dramatic composition as alleged in said bill, original, but that the same, in form and substance, was then and theretofore existed as common knowledge, generally known, and common speech, generally and frequently used, within the limits of the jurisdiction of this honorable court; that the plaintiff's alleged copyright therein is void (a) because the same was not original with the plaintiff, or with those under whom he claims; (b) because the same was not and is not possessed of sufficient originality to entitle it to protection under the copyright laws enacted by congress in pursuance of the power conferred by the constitution of the United States upon congress "to promote the progress of science and useful arts by securing, for limited times, to authors and inventors, the exclusive right to their respective writings and discoveries. Wherefore, and for divers other good causes of demurrer appearing on the said bill, the defendant doth demur thereto. And he prays the judgment of this honorable court whether he shall be compelled to make any answer to the said bill; and he humbly prays to be hence dismissed, with his reasonable costs in this behalf sustained.

Alexander P. Browne, for complainant.

Lauriston L. Scaife, for defendant.

PUTNAM, Circuit Judge. This case was argued orally in July last. The court would have been pleased to have disposed of it immediately thereafterwards, but counsel desired permission to file additional briefs, which was granted. They were not filed until October last. The case thus lost its place, and was not easily taken up again.

One ground of demurrer is an alleged lack of originality. It was claimed at the hearing that the court had the judicial knowledge touching the portion of complainant's dramatic composition under consideration requisite to dispose of the question of novelty on demurrer, but the court then indicated that it had settled views otherwise. The court had in mind the observations which it made in Industries Co. v. Grace, 52 Fed. 124, where it condemned the growing disposition to consider such questions on demurrer, and distinguished Brown v. Piper, 91 U. S. 37, so frequently referred to in this connection. In that case, however, the court had no necessity of making a definitive ruling, but it takes this opportunity to do so.

First of all it must be noted that there is a broad distinction between cases heard on bill, answer, and proof, and those on demurrer, although it may be that in the former class the court may sometimes be compelled to dispose of questions of originality from the same common knowledge and experience which it is asked to apply in disposing of this demurrer. Such questions, however, are mainly questions of fact; and the court, on bill, answer, and proofs, sits to try questions of fact as well as of law, and therefore is justified in using the same faculties and resources which other tribunals, in determining such questions, are justified in using, and is compelled to do so.

It was pointed out by the court in Industries Co. v. Grace, ubi supra, that as Brown v. Piper, ubi supra, was heard on bill, answer, and proofs, the complainant had full opportunity, and all the facts were before the court. On such a record, the court, as judges of the fact, could, with propriety, say that there was nothing on the face of the patent itself which could require its attention. The other cases referred to by the defendant, including Densmore v. Scofield, 102 U. S. 375; Slawson v. Railroad Co., 107 U. S. 649, 2 Sup. Ct. 663; also other cases not referred to, as Terhune v. Phillips, 99 U. S. 592, and Phillips v. City of Detroit, 111 U. S. 604, 4 Sup. Ct. 580; and still others which might be cited,—were all heard on bill, answer, and proofs, and under such circumstances that the expressions "judicial knowledge" or "judicial notice" would naturally be used in a very loose sense. Certainly, in none of them was the precise proposition raised which is presented in this case, that is, whether the facts appearing on the face of the subject-matter claimed are such as to require the court to interpose its judicial knowledge, to the extent of finding on demurrer against the allegations of the bill touching questions of originality. This it must do with reference to matters strictly of judicial knowledge, as known at common law. The distinction is not a vain one, because erroneous matter of law, if perpetuated, becomes a deformity, while findings of fact, if likewise erroneous, are swept away, and become a portion of the undigested mass of such findings. Assumption on the part of courts of knowledge which they may not in fact possess, followed by numerous dismissals of suits on

demurrer, would involve the hazard of barring meritorious causes contrary to the express allegations of the bill. Especially would this occur in that class of cases referred to in Industries Co. v. Grace, ubi supra, in which the questions of utility and patentable novelty are in some degree determined by what transpires subsequently to the issue of the patent. We therefore concur in what was said by Judge Shipman in Blessing v. Steam Copper Works, 34 Fed. 753, as follows:

"To decide, in advance of an opportunity to give evidence, that no evidence can possibly be given upon the question of invention which would permit the case to be submitted to the jury, seems to me to be ill advised, except in an unusual case."

No doubt there is a limited class of cases in which the court must, on demurrer, from the standpoint of judicial notice, disregard allegations in the bill of novelty, patentable invention, and utility. This class divides itself into two great groups; one relating to matters of which the court must take notice without reference to common experience and knowledge, as these words are ordinarily understood, and the other to those within such experience and knowledge. But the latter, as stated in Brown v. Piper, ubi supra (page 42), involves a power which is to be exercised by the courts with caution. In that case the court further continued: "Care must be taken that the requisite notoriety exists," and "every reasonable doubt on the subject should be resolved promptly in the negative." To go beyond this will not only involve the courts in irreconcilable contradictions and inconsistencies, but shut out, unnecessarily, meritorious claims and defenses.

That, if the bill at bar expressly alleged originality, the case would come within these deductions is to clear to need consideration. It fails to allege authorship, except by an implication arising from the statute words "written or composed." Being, however, in that particular, in a form not uncommon, and no specific exception having been taken on that account, the court is required to presume that these words import originality, although it cannot commend so meager a form of alleging a proposition so fundamental.

The other point made by the defendant touches the quality of the complainant's copyrighted matter, and so falls much more easily within the judicial cognizance of the court. It is a general rule that what are the essential characteristics of matter patented or copyrighted, aside from mere originality or utility, is a question of law, and but little subject to the influence of extrinsic facts alleged in the bill, or proved on a hearing; and therefore, for the most part, they can be considered on demurrer. The defendant alleges that the subject-matter of this copyright does not tend to promote the progress of science and useful arts, and therefore is not within the scope of the power granted congress by the constitution. So far as this is a general proposition, aimed at all dramatic compositions of the character in question in the case at bar, it needs but little consideration. The court is not disposed to take the narrow view of the expression "useful arts" propounded on either side of this case,

nor does it deem it necessary to determine whether the purpose announced in this paragraph of the constitution directly or indirectly limits the powers of congress, as claimed by the defendant, and denied by the complainant. It is enough to say that whether we look only at the direct results of what is addressed to the taste, the imagination, or the capacity of being amused, and the enjoyment which immediately follows therefrom, or whether we look further, and consider what is essential to keep the physical, moral, and intellectual powers refreshed, all such have been regarded by the courts, ever since patents or copyrights were authorized by statute, as within the range of utility and the useful arts. Even when the intellect is strained to accomplish its greatest results, the standard prescription from Euclid may be useful, but an occasional one from the Book of Nonsense is not to be despised. The learned author of Walker on Patents has well said:

"Utility is not negatived by the fact that the manufacture covered by the patent has no function except to decorate the object to which it is designed to be attached. In such cases, utility resides in beauty. Whatever is beautiful is useful, because beauty gives pleasure, and pleasure is a kind of happiness, and happiness is the ultimate object of the use of all things."

But the question need not be pursued, as it is fully covered by the decisions of the supreme court. In Lithographic Co. v. Sarony, 111 U. S. 53, 4 Sup. Ct. 279, the constitutional question was directly considered, and the monopoly of a photograph of "one Oscar Wilde" was protected.

This, however, runs off into another line of propositions insisted on by the defendant, which, to a certain extent, illustrate those already considered, and are also, to a certain extent, covered by what we have said on the question of originality. We refer to the claim that the subject-matter of what is set out by complainant is too trivial to demand the notice of the law. There is, in the main, the same difficulty in considering this question on demurrer that arose with reference to the first proposition discussed. It is true that some matter may be copyrighted, so trivial that the court can see, as a matter of judicial sense, that it is so clearly unimportant as not to be within the statute. But, in the field in which this particular copyright belongs, it is not easy for the court to make a determination of that character. This comes from the peculiarity of the essential nature of the subject-matter. If judicial tribunals could lay down maxims by which to determine judicially what dramatic compositions claimed to be humorous, or to appeal to the sense of humor, are in this particular within or without the copyright act, they would, by demonstration, be in possession of rules which would enable them to be themselves at all times witty, at their own option. The very essence of some kinds of humor is in unexpectedness and lack of proportion; and therefore neither courts nor juries have any certain rule for valuing it, except such as comes from evidence of the effect which the composition in question has on masses of men. The claim made by the defendant that "the box-office value" fails to furnish any test under the copyright laws of

the United States, with reference to dramatic compositions, is not sustainable. While, on the question of the patentable novelty of a patented article, its salability is to be considered only guardedly, and in doubtful cases, yet with reference to matters like this at bar, touching which there are no rules except in the unmeasured characteristics of humanity, their reception by the public may be the only test on the question of insignificance or worthlessness under the copyright statutes.

On this proposition, and also on the question of what degree of originality is required in order to sustain a copyright, the extracts so freely made by counsel from Drone are too general to especially guide the court, and the solution is in the practical application of the law as found in the decided cases. There is a very broad distinction between what is implied in the word "author," found in the constitution, and the word "inventor." The latter carries an implication which excludes the results of only ordinary skill, while nothing of this is necessarily involved in the former. Indeed, the statutes themselves make broad distinctions on this point. So much as relates to copyrights (Rev. St. § 4952) is expressed, so far as this particular is concerned, by the mere words, "author, inventor, designer or proprietor," with such aid as may be derived from the words "written, composed or made," found in Id. § 4971. In this respect the language of Id. § 4929, providing for patterns for designs, is in marked contrast. Designs are therefore assumed to fall in line with mechanical patents, and are held to require the exercise of the inventive faculty. Smith v. Saddle Co., 148 U. S. 674, 13 Sup. Ct. 768. But a multitude of books rest safely under copyright, which show only ordinary skill and diligence in their preparation. Compilations are noticeable examples of this fact. With reference to this subject, the courts have not undertaken to assume the functions of critics, or to measure carefully the degree of originality, or literary skill or training involved. An example of the moderate degree of literary merit sufficient to entitle a dramatic composition to protection under the statutes, is found in Daly v. Palmer, 6 Blatchf. 256, Fed. Cas. No. 3,552, and again in Daly v. Webster (decided by the court of appeals for the second circuit), 4 C. C. A. 10, 56 Fed. 483, each touching the "railroad scene," so called. There is also the case, not officially reported, of the comic song, entitled, "Slap, Bang, Here We Are Again!" protected by the common pleas division, although the impresion which the title gives would suggest little value, except what might be shown by sales. It appeared in this case that the copyright was worth from £1,000 to £2,000, and at the time of the trial as many as 90,000 copies had been sold.

On the patent side of the statute, it was truly said in Robinson on Patents:

"A mere curiosity, a scientific process exciting wonder, yet not producing physical results, * * * whatever its novelty, and whatever skill has been involved in its production, does not fall within the required class of useful inventions."

Under the copyright side of the statute, however, especially so far as it relates to dramatic compositions, what appeals to the sense of curiosity, or excites wonder, is especially valuable, and therefore must be protected, or the purpose of the statute would fail in a very large measure. On the whole, the authorities sustain the implication arising from Mr. Drone's statement of the converse rule, as follows:

"To be worthy a copyright, a thing must have some value as a composition, sufficiently material to lift it above utter insignificance and worthlessness."

And in view of the fact that the demurrer necessarily admits, for all present purposes, that the defendant has taken the trouble to imitate the complainant's production, another observation of Mr. Drone is also pertinent:

"If it has merit and value enough to be the object of piracy, it should also be of sufficient importance to be entitled to protection."

Notwithstanding these observations, which bar the court from sustaining the demurrer on the points discussed, complainant must be cautioned that the bill alleges that the song which the defendant is claimed to have imitated, forms "an important and valuable part" of complainant's dramatic composition, and that the infringement is "substantially material," and that the bill contains other allegations of similar purport. The court does not intend to bar itself from refusing an injunction and a master, in the event these allegations should not be sustained, even if there was enough left to entitle the complainant to nominal or trivial damages at law. Crump v. Lambert, L. R. 3 Eq. 409; Attorney General v. Sheffield Gas-Consumers' Co., 3 De Gex, M. & G. 304; Story, Eq. Pl. §§ 500–502; Smith v. Williams, 116 Mass. 510; Chapman v. Publishing Co., 128 Mass. 478.

One difficulty remains, to which attention has not been called by either party. Nevertheless, as it disenables the court from disposing of the case understandingly, the court must notice it sua sponte. The bill describes the song in question as a portion of a certain dramatic composition, and as an important and valuable part thereof. It does not say whether, by the word "song," is intended merely the words of the song, set out in the bill, or whether it includes the music which accompanies the words, and which, with the words, constitute a "song," in its more customary sense. The fact that it is part of a dramatic composition, leaves the inference in favor of the latter; but on this point the bill should be specific. The difficulty becomes a practical one, on pursuing the bill further. It states, in terms, that the defendant adopted complainant's refrain and chorus, but contains no express allegation touching the music which inferentially accompanied them. As the matter stands, the court is unable to see whether or not the music formed a part of the complainant's song, and, if it did, whether the music or the words were the novel or essential feature, and whether the defendant adopted the music, or only the words. Therefore, the court is unable to ascertain, from the allegations of the bill, whether in fact the

defendant did adopt any essential part of the complainant's dramatic composition; and the bill must be amended to make the case clear in this particular, before we can proceed further with it.

As this difficulty was not noticed by either party, neither is entitled to any consideration on the question of costs. If the complainant desires to amend, he may do so, or he may dismiss the bill, but in either case without costs to either party. Bill dismissed, without costs, unless, on or before May rules next, complainant amends in accordance with the opinion this day filed. Neither party to recover any costs accruing before or at that time.