## I. T. S. RUBBER CO. v. ESSEX RUBBER CO.

(District Court, D. Massachusetts. November 27, 1920.)

No. 1008.

1. Patents ⟨Key⟩288—Nonresident defendant must have place of business, and commit infringement, within district, to give court jurisdiction.

Under Judicial Code, § 48 (Comp. St. § 1030), it is essential to the maintenance of an infringement suit in a district other than that of defendant's residence that defendant have a regular and established place of business in such district, and that it shall have committed acts of infringement therein.

2. Patents ⟨Key⟩313—Where validity was admitted and infringement denied, case may be disposed of on motion to dismiss.

Where plaintiff sued a nonresident, alleging that it had a place of business within the district and had committed acts of infringement therein, and the validity of the patent was admitted, but the infringement denied, the case may be disposed of on motion to dismiss, which has supplanted a demurrer, on the theory that the alleged infringing articles did not infringe; it being proper, even in patent cases, to dispose of the issues without the usual mass of extraneous testimony.

3. Patents ⟨Key⟩313—Where earlier proceedings in Patent Office immaterial, case may be disposed of on motion to dismiss.

Where the validity of a patent was admitted, but infringement denied, defendant contending that the specified articles did not in fact infringe, the earlier patents and the proceedings in the Patent Office, as well as other piracies, were immaterial, and the case may be disposed of on motion to dismiss without a consideration of such matters.

⟨Key⟩For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

4. **Evidence** ☞518—**Where language used is intelligible to the court, expert testimony not considered; "contract."**

As a patent is a contract, and should have the same construction as any other contract, expert testimony need not be received, where the language used is such that the trial judge can determine the scope and extent of the patent.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Contract.]

5. **Patents** ☞157(1)—**"Patent" is contract between government and inventor.**

A "patent" is a contract between the government and the inventor, whereby the latter is granted the exclusive right to make, use, and vend his invention for a specified time, after which such right is to inure to the benefit of the public.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Patent.]

6. **Patents** ☞157(1)—**Patents should be construed as other contracts.**

The specification and claims of a patent constitute a contract between the government and the patentee, and they should be read and construed together in the same way and by the same rules by which other contracts are interpreted.

7. **Patents** ☞101—**Patent must show what is still open to public.**

The object of the patent law in requiring the patentee to particularly point out and distinctly claim the part, improvement, or combination which he claims as his invention or discovery is not only to secure to him all to which he is entitled, but is to apprise the public of what is still open to them.

8. **Patents** ☞165—**Patent is limited by language used.**

An inventor can use any language he wishes in describing his invention, and in stating his claims, but is bound by the phraseology used, and cannot add to or subtract from the language used; an accurate description of the invention being necessary, so that the government may know what is granted, that licensed persons may know how to use the invention, and that other inventors may know what part of the field is still unoccupied.

9. **Patents** ☞328—**No. 14,049, for concavo-convex heels, held not infringed by flat heels.**

Tufford patent, No. 14,049, reissued January 11, 1916, claims 5 to 10, for a heel lift of substantially nonmetallic resilient material having its body portion of concavo-convex form, on every line of cross-section, the concave upper face lying entirely below a plane passing through the rear upper edge and the breast corners of the lift, construed, and *held* limited to a heel lift, the concave surface of which is below a plane passing through the rear upper edge and breast corners, and so was not infringed by a straight-edged heel.

10. **Evidence** ☞518—**Where claims held understandable, expert testimony inadmissible.**

The claims of the Tufford reissue patent, No. 14,049, for resilient heel lifts, *held* understandable, and hence expert testimony as to the meaning of such claims was inadmissible.

11. **Patents** ☞328—**No. 14,049, for concave heels, not infringed by straight-edged heels; "line;" "edge."**

The Tufford reissue patent, No. 14,049, for a concavo-convex heel lift of resilient material, having its body portion of concavo-convex form, the concave upper face lying entirely below a plane passing through the rear upper edge and breast corners of the lift, cannot be infringed by a straight-edged heel; for an "edge" is a line where two surfaces meet, and a line has length, but no breadth or thickness; so, if the upper concave surface

☞For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

lies entirely below the plane passing through the three points where the surface ends, they must fall below the plane; otherwise, the edge would be a series of positions projected through empty space.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Edge; Line.]

**12. Patents ⟨⟩327—Decisions in patent cases by courts in other districts are not binding.**

While it is highly desirable that there be uniformity of decision between the federal courts of the various districts, and one court will defer to another on principles of comity, comity persuades, but it does not command; so adjudications in one district construing a patent in cases where its validity was attacked are not conclusive as to the scope of the patent in a subsequent infringement suit brought in another district.

**13. Patents ⟨⟩328—No. 14,049, for resilient heel, held not to include straight-edged heels on theory of equivalents.**

The Tufford re-issue patent, No. 14,049, having its body portion of concavo-convex form, the concave upper face lying entirely below a plane passing through the rear upper edge and breast corners of the lift cannot on the theory of equivalents be deemed to include straight-edged heels.

**14. Patents ⟨⟩328—No. 14,049, for resilient heels, held not to include straight-edged heels.**

While a patent should be construed so as to cover the entire inventive thought of the patentee, yet, the patentee is bound by the language used, and the Tufford reissue patent, No. 14,049 for a resilient heel lift having its body portion of concavo-convex form, the concave upper face lying entirely below a plane passing through the rear upper edge and breast corners of the lift, cannot by construction be deemed to include straight-edged heels.

**15. Judgment ⟨⟩675(1)—One not party to default judgment is not estopped.**

Although defendant, which manufactured heels claimed to infringe plaintiff's patent, participated in suits brought in other districts against its jobbers, and advised its jobbers to submit to decrees pro confesso, defendant paying the damage or profits, yet where it did not actually participate in any trial of the case on the merits as to infringement, such default decrees will not estop defendant in another proceeding from denying infringement.

**16. Judgment ⟨⟩707—Default decree is not estoppel as to stranger to record.**

A default decree cannot be an estoppel as to a stranger to the record.

**17. Patents ⟨⟩327—Defendant not concluded, because it might have had question litigated.**

Though defendant might in other litigation have had its day in court on the question of infringement, yet where it was not made a party and did not appear, it is not estopped by decrees pro confesso, and may later litigate that question.

In Equity. Suit by the I. T. S. Rubber Company against the Essex Rubber Company. On defendant's motion to dismiss. Motion granted, and bill dismissed.

Frederick A. Tennant and Nathan Heard, both of Boston, Mass., and F. O. Richey and E. D. Fales, both of Elyria, Ohio, for plaintiff.

Emery, Booth, Janney & Varney, of Boston, Mass., and Lucius Varney, of New York City, for defendant.

ANDERSON, Circuit Judge. The defendant moves to dismiss for want of jurisdiction this patent infringement suit, brought by an Ohio

corporation against a New Jersey corporation for alleged infringement of the Tufford patent on resilient heels, No. 14,049, reissued January 11, 1916.

[1] The jurisdiction in this district, if any, is grounded on section 48 of the Judicial Code, the relevant parts of which are as follows:

"In suits brought for the infringement of letters patent the District Courts of the United States shall have jurisdiction, in law or in equity, in the district of which the defendant is an inhabitant, or in any district in which the defendant * * * shall have committed acts of infringement and have a regular and established place of business."

As the defendant is not an inhabitant of this district, unless (1) it has a regular place of business within this district, and (2) has committed at least one act of infringement in this district (compare Westinghouse Electric Co. v. Stanley Electric Co. [C. C.] 116 Fed. 641), this court is without jurisdiction, even although the defendant may elsewhere have committed acts of infringement. Plaintiff has duly pleaded both grounds of jurisdiction. Defendant admits the requisite place of business here, but denies any act of infringement within the district.

After motion by the defendant for particulars, a stipulation was filed that certain attached heels (Plaintiff's Exhibits 1 and 2, and Defendant's Series A and B) were sold by the defendant in this district, and constituted the sole acts of infringement within this district relied upon to give this court jurisdiction.

The defendant thereupon moved to dismiss, on the ground that it appears on the record thus made that there was no infringement in this district.

[2] The question thus presented is essentially the same as though the plaintiff had in its bill set up its patent with the usual allegations, plus the claim that the defendant had been guilty of infringement by selling within this district certain attached samples of heels. The defendant might, under the old practice, have demurred to such a bill, assigning as cause for the demurrer that it appeared from the bill that the alleged infringing structures were not infringements.

Obviously such brief and summary method of disposing of a patent case—generally distinguished for length, prolixity, and presence of extraneous and immaterial matter—is not usual. It calls for and has had careful consideration. There seems to be no reason why the principles used in the labor and money saving device of demurrer should not be utilized in patent litigation as well as elsewhere.

Moreover, if the defendant is correct in its contention that, if this motion is sustained, an appeal may (and probably must) take the questions involved directly to the Supreme Court, there are obvious practical advantages in having an early construction of this patent by that court. The case relied on for this contention is W. S. Tyler Co. v. Ludlow-Saylor Wire Co., 236 U. S. 723, 35 Sup. Ct. 458, 59 L. Ed. 808. That was a patent infringement suit, brought in the Southern district of New York by an Ohio corporation against a Missouri corporation. The trial court held that the plaintiff had neither established that it had the requisite place of business in that district, nor had committed

an act of infringement by making a sale there. The Supreme Court held that the case was properly before it on appeal, and that certiorari should therefore be denied.

It is difficult to distinguish that case from the case at bar. American Electric-Welding Co. v. Lalance & Grosjean Mfg. Co., 249 Fed. 968, 162 C. C. A. 166, is another recent case, closely in point, in which Judge Bingham, for the Court of Appeals for this circuit, cites numerous cases concerning appellate jurisdiction, holding that in such case the Court of Appeals has no jurisdiction.

The procedure here invoked is consistent with that adopted by the Court of Appeals for the Seventh Circuit, affirming a decision by District Judge Carpenter, in Bronk v. Charles H. Scott Co., 211 Fed. 338, 128 C. C. A. 17. In that case, answering interrogatories, the plaintiff admitted that the alleged infringement consisted solely in defendant's manufacture and sale of certain articles identified and described in the interrogatories. The defendant's motion to dismiss, on the ground that the answers disclosed that there was no infringement, was sustained; the court saying:

" * * * The principles that are applicable to a demurrer should be applied, for the reason that appellant's answers to the interrogatories are the same in effect as if she had charged in her bill that appellee's infringement consisted solely in the manufacture and sale of the protectors which were identified and described in the interrogatories."

In that case pleadings had also put the validity of the patent in issue, and the defendant had tendered the file wrapper and copies of numerous patents of the prior art. But the file wrapper and these patents were disregarded by the court, which disposed of the case on the single issue of noninfringement.

In Krell Auto Grand Piano Co. v. Story & Clark Co., 207 Fed. 946, 949, 125 C. C. A. 394, is a collection of patent infringement cases in which the scope and function of demurrers are discussed. Compare Lange v. McGuin, 177 Fed. 219, 101 C. C. A. 389.

There are many cases in which the courts have held that both validity and infringement might be properly determined on demurrer. See American Fiber Chamois Co. v. Buckskin Fiber Co., 72 Fed. 508, 18 C. C. A. 662, a decision in 1896 by the Circuit Court of Appeals for the Sixth Circuit—Judges Taft, Lurton, and Hammond. Judge Taft says (72 Fed. 511, 18 C. C. A. 665):

"The rule is now well settled that a defendant to a patent infringement bill may raise the question on demurrer whether the alleged invention, as disclosed by the specifications of the patent, is devoid of patentable novelty or invention. Richards v. Elevator Co., 158 U. S. 299, 15 Sup. Ct. 831; West v. Rae, 33 Fed. 45. It is also well settled that, in considering the question of the validity of a patent on its face, the court may take judicial notice of facts of common and general knowledge tending to show that the device or process patented is old, or lacking in invention, and that the court may refresh and strengthen its recollection and impression of what facts were of common and general knowledge at the time of the application for the patent by reference to any printed source of general information which is known to the court to be reliable, and to have been published prior to the application for the patent. Brown v. Piper, 91 U. S. 38. The presumption from the issuance of the patent is that it involves both novelty and invention. The effect of dismissing

the bill upon demurrer is to deny to the complainant the right to adduce evidence to support that presumption. Therefore the court must be able, from the statements on the face of the patent, and from the common and general knowledge already referred to, to say that the want of novelty and invention is so palpable that it is impossible that evidence of any kind could show the fact to be otherwise. Hence it must follow that, if the court has any doubt whatever with reference to the novelty or invention of that which is patented, it must overrule the demurrer, and give the complainant an opportunity, by proof, to support and justify the action of the patent office. This is the view which has been taken by the Supreme Court, and the most experienced patent judges upon the circuit. New York Belting & Packing Co. v. New Jersey Car-Spring & Rubber Co., 137 U. S. 445, 11 Sup. Ct. 193; Manufacturing Co. v. Adkins, 36 Fed. 554; Blessing v. Copper Works, 34 Fed. 753; Bottle-Seal Co. v. De La Vergne Bottle & Seal Co., 47 Fed. 59; Industries Co. v. Grace, 52 Fed. 124; Goebel v. Supply Co., 55 Fed. 825; Hanlon v. Primrose, 56 Fed. 600; Dick v. Well Co., 25 Fed. 105; Kaolatype Co. v. Hoke, 30 Fed. 444; Coop v. Development Inst., 47 Fed. 899; Krick v. Jansen, 52 Fed. 823; Manufacturing Co. v. Housman, 58 Fed. 870; Davock v. Railroad Co., 69 Fed. 468; Henderson v. Thompkins, 60 Fed. 758."

See, also, the discussion by Judge Blodgett in Manufacturing Co. v. Adkins (C. C.) 36 Fed. 554.

In Brown v. Piper, 91 U. S. 37, 44, 23 L. Ed. 200, a case that went after a trial on appeal from this district, the court, by Mr. Justice Swayne, said:

"We think this patent was void on its face, and that the court might have stopped short at that instrument, and without looking beyond it into the answers and testimony sua sponte, if the objection were not taken by counsel, well have adjudged in favor of the defendant."

In Slawson v. Grand St. R. R. Co., 107 U. S. 649, 2 Sup. Ct. 663, 27 L. Ed. 576, the Supreme Court cited with approval the foregoing quotation from Brown v. Piper, and approved the practice of dismissing a patent infringement bill for want of patentability, even when the answer does not allege such defense. Mr. Justice Woods said concerning patents:

"If they are void because the device or contrivance described therein is not patentable, it is the duty of the court to dismiss the cause on that ground whether the defense be made or not."

In Richards v. Chase Elevator Co., 158 U. S. 299, 15 Sup. Ct. 831, 39 L. Ed. 991, Mr. Justice Brown says:

"While patent cases are usually disposed of upon bill, answer, and proof, there is no objection, if the patent be manifestly invalid upon its face, to the point being raised on demurrer, and the case being determined upon the issue so formed. We have repeatedly held that a patent may be declared invalid for want of novelty, though no such defense be set up in the answer"—citing Dunbar v. Myers, 94 U. S. 187, 24 L. Ed. 34; Slawson v. Grand Street Railroad Co., 107 U. S. 649, 2 Sup. Ct. 663, 27 L. Ed. 576; Brown v. Piper, 91 U. S. 37, 23 L. Ed. 200.

Ordinarily—certainly in this case—infringement is a sharper, narrower, and cleaner-cut issue than patentability.

I conclude on principle and authority that it is the duty of the court to grant this motion, unless it appears that the heels relied upon as an infringement within this district are or may be found to be an infringement of the plaintiff's patent. But if, on this issue, expert testimony

or other extraneous evidence be requisite to assist in the construction of the patent or to determine whether the defendant's products infringe, the case must stand for hearing.

[3] Plaintiff's counsel, pursuant to the common custom in patent litigation, has sought to put before the court a vast mass of extraneous matter—referring to the file wrapper; to contentions made by Tufford or his counsel during the proceedings in the Patent Office; to earlier patents held in other litigation not to anticipate; to the alleged commercial success of the patent; to numerous piracies of infringers, rich and arrogant, as well as poor and humble. In my view, none of these matters have anything to do with the case before me. They are thrown in merely to give color. The plaintiff has set up a patent which, for present purposes, is admitted to be valid. It alleges that this defendant has, by sale within this district of certain heels which are before this court, infringed this admittedly valid patent. I cannot see how earlier patents, the proceedings in the Patent Office, the commercial career, successful or unsuccessful, of the plaintiff, or the piracies of other heel manufacturers, have anything to do with the question that this court must now decide.

[4-8] A patent is a contract; to that all agree. It should be construed as other contracts are construed. In construing any other contract than a patent, no lawyer or judge thinks of asking consideration of the confused mass of extraneous and impertinent material commonly inflicted upon courts in patent litigation. Plaintiff's counsel himself in his brief conceded that—

"*  *  * In such matters as considering the file wrapper and other preliminary proceedings courts have in patent cases drifted beyond any practice that should be tolerated in construing contracts. *  *  *"

The place, frequently the improper place, held by expert testimony in patent litigation, is admirably dealt with in the very recent opinion of the Court of Appeals for the Second Circuit; Judges Rogers, Manton, and Learned Hand affirming District Judge Augustus N. Hand in Kohn v. Eimer (C. C. A.) 265 Fed. 900. What seems to me the sound view is so much better said there than I can state it that I quote at some length:

"We have not the slightest wish to minimize the vital importance of expert testimony in patent suits, or to suggest that we are not absolutely dependent upon it within its proper scope; but that scope is often altogether misapprehended, as the appellant has misapprehended it here. Specifications are written to those skilled in the art, among whom judges are not. It therefore becomes necessary, when the terminology of the art is not comprehensible to a lay person, that so much of it as is used in the specifications should be translated into colloquial language; in short, that the judge should understand what the specifications say. This is the only permissible use of expert testimony which we recognize. When the judge has understood the specifications, he cannot avoid the responsibility of deciding himself all questions of infringement and anticipation, and the testimony of experts upon these issues is inevitably a burdensome impertinence.

"Now the question whether the judge needs the assistance of experts to understand the specifications is for him to decide. Doubtless he ought to be chary of assuming too readily that he does understand what he may not; but, if he is too confident, his mistake eventually transpires. The important point is that it is he who must determine when he needs the help of experts and

when he does not, and that decision, except in the clearest case, we should not be disposed to disturb. Waterman v. Shipman, supra, was written when no judges presided at the trial and when, therefore, there was no one to decide whether or not expert testimony was necessary. It has no application whatever since the new equity rules (198 Fed. xix, 115 C. C. A. xix), the whole purpose of which, in this regard, was to render suits in equity less oppressive to suitors by some control over the admission of evidence. One of the chiefest scandals of the old procedure was the interminable examination of experts, to extract their opinions upon the very issues which the courts alone could decide. The logomachy which resulted from the cross-examination of an expert by the opposing lawyer was arid beyond belief. No one read it, every one was annoyed by it, and some one paid for it.

"In the case at bar we see no reason whatever to differ from the learned District Judge in his conclusion that the specifications of all these patents speak a language comprehensible enough, without experts, for the disposal of the case. As this was all that he ought to have used it for in any event, we do not see how he could have done differently."

The present case seems to me emphatically one in which elementary and well-settled, but frequently disregarded, rules of construction should be applied. The principles I am endeavoring here to apply are illustrated in the following cases and excerpts:

In Denning Wire & Fence Co. v. American Steel & Wire Co., 169 Fed. 793, at 799, 95 C. C. A. 259, 265, the Court of Appeals for the Eighth Circuit said:

"A patent is a contract between the government and the patentee, whereby the latter is granted the exclusive right to make, use, and vend his invention for a specified time after which such right is to inure to the benefit of the public. Seymour v. Osborne, 11 Wall. 516–533, 20 L. Ed. 33. And the rule for the construction of contracts generally controls in its interpretation, and when its terms are plain and the intention of the parties clearly manifest therefrom, they must prevail."

This doctrine is again well stated in O'Brien-Worthen Co. v. Stemple, 209 Fed. 847, 852, 128 C. C. A. 53, 58:

"The specification and claims of a patent constitute a contract between the United States and the patentee, and they are to be read and construed together in the same way and by the same rules by which other contracts are interpreted. The specification which forms a part of the same petition or application as the claims must be read and interpreted with them, not for the purpose of limiting, or of contracting, or of expanding, the latter, but for the purpose of ascertaining from the entire agreement, of which each is a part, the actual intention of the parties."

In construing a patent, it sometimes seems to be overlooked that the public as well as the patentee has rights. See McClain v. Ortmayer, 141 U. S. 419, 12 Sup. Ct. 76, 35 L. Ed. 800, where the court said:

*"The object of the patent law in requiring the patentee to 'particularly point out and distinctly claim the part, improvement or combination which he claims as his invention or discovery,' is not only to secure to him all to which he is entitled, but to apprise the public of what is still open to them. The claim is the measure of his right to relief, and while the specification may be referred to to limit the claim, it can never be made available to expand it."*

Compare, also, Evans v. Hall Co., 223 Fed. 539, 541, 139 C. C. A. 129, 131:

"The inventor can, of course, use any language he wishes in describing his invention and in stating his claims. Having done so, however, he must abide by the phraseology chosen. It is then too late to reconstruct his claims by adding to or subtracting from the language used. This rule may result in hardship in many cases *but a contrary rule would work a far greater injustice and would enable the patentee to hold as infringers those who have invested their capital in what they supposed, relying on the plain language of the patent, to be a perfectly legitimate business.* When the language of the claims of a patent is clear and distinct, the patentee is bound by it. Keystone Bridge Co. v. Phœnix Iron Co., 95 U. S. 274, 24 L. Ed. 344; Merrill v. Yeomans, 94 U. S. 568, 24 L. Ed. 235."

Another pertinent statement by the Supreme Court is found in Bates v. Coe, 98 U. S. 31, 25 L. Ed. 68:

"Accurate description of the invention is required by law for several important purposes: (1) That the government may know what is granted, and what will become public property when the term of the monopoly expires. (2) That licensed persons desiring to practice the invention may know during the term how to make, construct, and use the invention. (3) That other inventors may know what part of the field of invention is unoccupied."

See, also, the statement of Mr. Justice Miller in Merrill v. Yeomans, 94 U. S. 568, 24 L. Ed. 235, where, in 1876, he said:

"The growth of the patent system in the last quarter of a century in this country has reached a stage in its progress where the variety and magnitude of the interests involved require accuracy, precision, and care in the preparation of all the papers on which the patent is founded. It is no longer a scarcely recognized principle, struggling for a foothold, but it is an organized system, with well-settled rules, supporting itself at once by its utility, and by the wealth which it creates and commands. The developed and improved condition of the patent law, and of the principles which govern the exclusive rights conferred by it, leave no excuse for ambiguous language or vague descriptions. The public should not be deprived of rights supposed to belong to it, without being clearly told what it is that limits these rights. The genius of the inventor, constantly making improvements in existing patents—a process which gives to the patent system its greatest value—should not be restrained by vague and indefinite descriptions of claims in existing patents from the salutary and necessary right of improving on that which has already been invented. It seems to us that nothing can be more just and fair, both to the patentee and to the public, than that the former should understand, and correctly describe, just what he has invented, and for what he claims a patent."

The language of Mr. Justice Bradley in Keystone Br. Co. v. Phœnix Iron Co., 95 U. S. 274, 278, 24 L. Ed. 344, is exactly applicable to the plaintiff's contentions in this case:

"When the terms of a claim in a patent are clear and distinct (as they always should be), the patentee, in a suit brought upon the patent, is bound by it. Merrill v. Yeomans, 94 U. S. 568. He can claim nothing beyond it. But the defendant may at all times, under proper pleadings, resort to prior use and the general history of the art to assail the validity of a patent or to restrain its construction. The door is then opened to the plaintiff to resort to the same kind of evidence in rebuttal; but he can never go beyond his claim. As patents are procured ex parte, the public is not bound by them, but the patentees are. And the latter cannot show that their invention is broader than the terms of their claim; or, if broader, they must be held to have surrendered the surplus to the public."

It is the plaintiff—the patentee—that in this case desires to go outside the patent in order to find support for its claim as to the scope

of its monopoly. The defendant here is content to concede that the plaintiff has the full extent of the monopoly that the language of the patent is reasonably capable of defining, and, so conceding, objects to expert or other extraneous evidence to extend its limits. Defendant contends that, in construing patents, the court should put itself, so far as possible, in the position that competent counsel are in when asked for advice by clients as to their rights and duties. It argues that such counsel, before advising as to the scope of a patent, is not required carefully to compare all earlier patents in the same general field, study in detail the proceedings in the Patent Office, and resort to expert advice as to simple structures and functions. It is conceded that, if proposing to attack the validity of the patent, such thorough study may be necessary. But when, as in this case, a defendant concedes the validity of the patent, and simply undertakes to construe it in order to avoid encroachment upon its field of conceded monopoly, it is argued that the patent must speak for itself; that otherwise we are in grave danger of disregarding the fundamentally important principle stated by the Supreme Court in McClain v. Ortmayer, 141 U. S. 419, 12 Sup. Ct. 76, 35 L. Ed. 800, quoted above, to wit:

"The object of the patent law, in requiring the patentee to 'particularly point out and distinctly claim the part, improvement, or combination which he claims as his invention or discovery,' is not only to secure to him all to which he is entitled, but to apprise the public of what is still open to them."

This contention must prevail.

When we consider that a patent is nothing but a contract between the nation and the patentee, in the main couched in the patentee's own language, granting the inventor a monopoly, it is utterly inadmissible to extend this monopoly beyond the limits fairly defined by the inventor himself. What an inventor does not plainly claim he cannot have—unless we are to make patent construction a trap—a fraud upon the general public. Compare Keystone Br. Co. v. Phœnix Iron Co., 95 U. S. 274, 278, 24 L. Ed. 344; Railroad Co. v. Mellon, 104 U. S. 112, 118, 26 L. Ed. 639; Merrill v. Yeomans, 94 U. S. 568, 24 L. Ed. 235; Burns v. Meyer, 100 U. S. 671, 25 L. Ed. 738; Sargeant v. Hall, etc., Lock Co., 114 U. S. 63, 5 Sup. Ct. 1021, 29 L. Ed. 67.

[9, 10] I turn, now, to the patent in suit. The defendant is charged with infringing claims 5 to 9, inclusive. In the earlier part of the specification it is stated that the invention relates to an improvement in elastic lifts adapted for the ordinary heel. The patentee then describes the defects in the flat heels in common use, and states that he is aware that it has been proposed to use a cushion lift, having a concave upper face, but does not believe that any practical or satisfactory means has yet been discovered for attaching such lift permanently. He then points out that the common methods of attaching such concave lift by nails and screws, or by an imbedded plate, are defective, because the plate tends to flatten out and cut through the heel, and the nails and washers in a shoe are in a short time exposed by wear.

One stated object of his invention is therefore to provide a lift such that, when applied to a shoe heel, the edge portions will not project beyond the sides of the heel. Another is so to arrange the at-

taching devices that they will be relatively remote from the edge of the heel. Another is so to form the upper concave side of the cushion that, when the lift is subjected to pressure, any tendency of the edge portions to crowd beyond the sides will be counteracted, and there will be equally as great a tendency to crowd or compress toward the center thereof. This last result is alleged to be in part accomplished by forming separate and distinct suction areas. The invention further aims to construct the lift and the attaching means, so as not to destroy or impair the suction action resulting upon the use of a lift having a concave upper surface, which, as already noted, the specification points out as not being new.

The specification then describes a new method of fastening through washers buried in the heel and so arranged as to hold down the center of the concavo-convex heel, without leaking and thus destroying the suction incident to such concave type of heel.

I agree with defendant's counsel that the specification indicates that the inventor regarded his invention as mainly related to the attaching means and the independent suction areas. He plainly recognizes that concave heels had been previously used, but, as he alleges, not with entire satisfaction, because of the ill-adapted means of attachment. His main conception, as he describes it, is an improved fastening device. None of the claims for covering or fastening devices are here in suit. It is necessary to refer to them only to view the whole patent in proper perspective.

After describing the advantages of the new fastening devices, among which are that the suction accruing from the use of a concave lift will not be destroyed, the specification goes on to refer to the drawings, as to which it is stated:

"It will be seen that the concave upper face of the lift lies entirely below a plane passing through the rear upper edge and breast corners of the lift, whereby to cause the entire margin of said lift to exert a uniform pressure on the heel of a shoe, when the lift is positioned on the heel and the convex face thereof depressed to flatten said lift. In other words, owing to the curvature of the concave attaching face of the lift, the rear upper edge and breast corners of said concave attaching face are disposed in a plane above the upper side edges and the breast edges of the lift."

The drawings conform very closely to this description.

After a further description of the separate suction areas, come the claims, of which now material are 5–9, as follows:

"5. A heel lift of substantially nonmetallic resilient material having its body portion of concavo-convex form on every line of cross-section, the concave upper face lying entirely below a plane passing through the rear upper edge and the breast corners of the lift.

"6. A heel lift of substantially resilient material, having its body portion of concavo-convex form on every line of cross-section, the concave upper face lying entirely below a plane passing through the rear upper edge and the breast corners of the lift, said lift being provided with nail receiving openings located near the center thereof.

"7. A heel lift of substantially resilient material, comprising a body portion, the attaching face of which is concave and the tread face of which is convex on every line of cross-section, and normally held in such form by its own inherent resiliency, the concave attaching face lying entirely below a plane passing through the rear upper edge and the breast corners of the lift, whereby

to cause the entire margin of said lift to exert a uniform pressure on the heel of a shoe when said lift is positioned on the heel and the convex tread face thereof depressed to flatten said lift.

"8. A heel lift of resilient material, comprising a body portion of uniform thickness throughout its entire area and of concavo-convex form on every line of cross-section, the concave upper face of the lift lying entirely below a plane passing through the upper edge and the breast corners of said lift.

"9. A heel lift of resilient material, comprising a body portion, the attaching face of which is concave and the tread face of which is convex, the concave face of the lift being unbroken and lying entirely below a plane passing through the rear upper edge and the breast corners of the lift, whereby when the convex tread face is depressed to flatten said lift a suction will be created between the lift and the heel, to hold the attaching face of the lift throughout its entire extent in contact with the exposed face of the heel."

In every one of these five claims the upper face is referred to as "lying entirely below a plane passing through the rear upper edge and the breast corners of the lift." The repeated word "entirely" has significance.

Claim 10 is as follows:

"10. A heel lift of substantially resilient material, comprising a body portion, the attaching face of which is concave and the tread face convex on every line of cross-section, the rear upper edge and breast corners of the concave attaching face of the lift being disposed in a plane above the upper side and breast edges of said concave attaching face."

In this claim the plane which runs through the rear upper edge and breast corners (the same three points) is referred to as a "plane *above* the upper side and breast edges of said concave attaching face." This describes in reverse order the same relation of the plane to the three points. The specification, the drawings, and this language in the six claims, 5 to 10, inclusive, all seem to me to show that the plaintiff's conception was that of a heel, concavo-convex, which, when laid down upon a plane surface touches only at the rear and two breast corners —referred to in some of the cases as the "three-point contact heel." This heel, when pressed down upon a plane surface, adheres by suction.

Reading, as I must, the specification, claims, and drawing together, not for the purpose of enlarging or narrowing the scope of the claims, but for the purpose of determining what the patentee meant by the language used, my mind is forced to conclude that this shape-defining language concerning the concave upper face "lying *entirely* below a plane passing through the rear upper edge and breast corners" is of the very essence of the invention, so far as shape and not attaching devices is concerned. In my view, the patentee regarded the three-point contact shaped heel as the shape and structure of a heel which would effect the new and advantageous functional purposes he was seeking to achieve. Eight times in identical or equivalent words the patentee says this concave surface is *entirely* below the three points. He must be held to have meant what he said.

It therefore seems to me clear that, so far as these claims in suit are concerned, no heel having along the sides and rear a straight edge —all in one plane—can be held an infringement of the plaintiff's patent.

Now, the defendant's heel is a straight-edged heel. Other very substantial differences between it and the plaintiff's heel need not I think, be discussed. But the defendant's heel, when laid upon a plane surface, touches, not at three points, but at all points except between the breast corners; there it is curved. Otherwise stated, it is scoop-shaped, or nearly scoop-shaped. It is not spherical-shaped. If and in so far as the suction test has any bearing upon the questions involved, the defendant's heel does not, at least when tested by or before me by suction, adhere to a plane surface when pressed down. I doubt the value of this test; but it has been referred to in other litigation, and, if it is a ground of distinction, the distinction seems to exist. It certainly is of a shape very different from the patentee's heel. Pressure exerted when it is attached causes it to function differently from the heel of the patent.

In effect, plaintiff's counsel admits that the defendant's heels do not infringe the Tufford patent, unless that patent is to be construed as broad enough to cover heels with edges straight, except between the two breast corners. In that aspect, the essence of the present question is merely one of construction of the patent. It is not seriously contended that expert or other extraneous testimony, directed simply to the question of infringement, as distinguished from the question of the proper construction of the plaintiff's patent, is admissible. In other words, the plaintiff's contentions are: (1) The Tufford patent, as it reads, may be construed as broad enough to cover the defendant's admittedly straight-edge heels; and (2) that, if this is not so, expert testimony, proceedings in the Patent Office, and the prior art should be admitted to extend by construction the scope and effect of the plaintiff's patent, so as to cover defendant's straight-edge heels.

In this patent there is no terminology or phraseology of an art not comprehensible to a lay person, which needs to be translated into colloquial language in order to be fully comprehended. Compare Kohn v. Eimer, supra. All the terms used are plain and simple.

In my view, in such a case, to admit expert testimony or other extraneous evidence would be error. I cannot believe it admissible, even as matter of judicial discretion. But, even if admissible as matter of discretion, it seems to me impossible to hold it error for a trial court to say he needs not the assistance of experts in order to understand the language of the patent, and therefore to exclude it. See Kohn v. Eimer (C. C. A.) 265 Fed. 900. This is not, however, saying that the question of infringement of this patent, properly construed under settled rules of law, is not, in the language of Judge Taft in American Fiber Chamois Co. v. Buckskin Fiber Co., 72 Fed. 508, 511, 18 C. C. A. 662, 665, a question the result of which is "so palpable that it is impossible that evidence of any kind could show the fact to be otherwise."

If, therefore, it be held that the gist of the case is the question of infringement—always a question of fact (Walker, Patents, § 339)—the result is the same; the record as it stands is complete, and shows that there was no infringement in this district.

[11, 12] Plaintiff's counsel also contends that this motion should be

denied, as inconsistent with an alleged vast mass of judicial opinion elsewhere expressed concerning this patent. But, on analysis, there is no such mass of inconsistent judicial opinion as plaintiff's counsel asserts. Most of the discussion concerning the Tufford patent has been on the question of its validity, and its relation in that aspect to the prior art and to earlier patents. With those controversies this court has nothing to do. The patent is here admitted to be valid. None of the distinctions made in these opinions between it and earlier patents have any possible application to the question before me, except so far as, if at all, they bear upon the construction of the patent. Compare United States Rubber Co. v. I. T. S. Rubber Co., 260 Fed. 947, 171 C. C. A. 589; Fetzer & Spies Leather Co. v. I. T. S. Rubber Co., 260 Fed. 939, 171 C. C. A. 581; Elyria Co. v. I. T. S. Rubber Co. (C. C. A.) 263 Fed. 979; Tee Pee Rubber Co., Inc., v. I. T. S. Rubber Co., 268 Fed. 250, a decision by the Circuit Court of Appeals for the Sixth Circuit, July 15, 1920; I. T. S. Rubber Co. v. United Lace & Braid Mfg. Co. (D. C.) 266 Fed. 375, a decision by Judge Brown, dated June 11, 1920. See, also, I. T. S. Rubber Co. v. Panther Rubber Mfg. Co., 260 Fed. 934, 171 C. C. A. 576, in which the patent for molding the Tufford heels was before the Court of Appeals for this circuit.

In all these cases the issues were in essence different from that which is now before the court. In Judge Westenhaver's opinion, printed in 260 Fed. 941 et seq., dealing mainly with the validity of the patent, I find nothing whatever inconsistent with the views I have formed and expressed. Moreover, if the opinion of the Court of Appeals in the Sixth Circuit, reversing Judge Westenhaver's in Tee Pee Rubber Co. v. I. T. S. Rubber Co., 268 Fed. 250, decided July 15, 1920, has any bearing at all on the present litigation, it makes in favor of the defendant, and not in support of the plaintiff's contentions.

But in the per curiam opinion of the Sixth Circuit in United States Rubber Co. v. I. T. S. Rubber Co., 260 Fed. 947, 171 C. C. A. 589, views are expressed to the effect that the upper edges of the lift are not a part of the face, and that therefore these edges need not be "entirely below a plane passing through the rear upper edge and the breast corners of the lift." Judge Brown disagrees with the reasoning of the court in the Sixth Circuit, but seems to reach the same result.

With great deference to the opinions of both courts, I cannot bring my mind to accord on this particular point. As I understand it, an edge is a line where two surfaces meet. A line has length, but no breadth and thickness. If the concave upper surface lies "entirely below the plane passing through" the three points, the line where that surface ends seems to me necessarily to fall below the same plane. Otherwise the edge would be a theoretical series of positions projected through empty space. I cannot understand how an edge can be anything but the edge of a surface. If the surface is "entirely" below points, the edge must also be all below the same points; otherwise, the edge would not be the terminus of the surface; it would be beyond it. At any rate, whether I am right or wrong, I cannot view it differently. This I regret, for I regard comity, which is closely related to highly

desirable uniformity of decision, as a very important principle in the administration of the law. See Mast, Foos & Co. v. Stover Mfg. Co.. 177 U. S. 485, 488, 20 Sup. Ct. 708, 710 (44 L. Ed. 856). In that case the court said:

> "Comity persuades; but it does not command. It declares not how a case shall be decided, but how it may with propriety be decided. It recognizes the fact that the primary duty of every court is to dispose of cases according to the law and the facts; in a word, to decide them right. In doing so, the judge is bound to determine them according to his own convictions. If he be clear in those convictions, he should follow them. It is only in cases where, in his own mind, there may be a doubt as to the soundness of his views that comity comes in play and suggests a uniformity of ruling to avoid confusion, until a higher court has settled the law. It demands of no one that he shall abdicate his individual judgment, but only that deference shall be paid to the judgments of other co ordinate tribunals. Clearly it applies only to questions which have been actually decided, and which arose under the same facts."

Compare, also, Baldwin Co. v. Abercrombie & Fitch Co. (D. C.) 227 Fed. 455; Abercrombie & Fitch Co. v. Baldwin Co., 245 U. S. 198, 38 Sup. Ct. 104, 62 L. Ed. 240.

[13] Two other points call for brief consideration. The plaintiff's counsel contends that under the doctrine of equivalents plaintiff's patent covers straight-edge heels as well as curved edge heels, citing as his chief reliance Winans v. Denmead, 15 How. 330, 14 L. Ed. 717, and Reece Button-Hole Co. v. Globe Button-Hole Co., 61 Fed. 958, 10 C. C. A. 194.

I can find no real analogy between either of these decisions and the case at bar. The Winans Case involved a patent on a coal car made in the form of the frustrum of a cone. The alleged infringing car was octagonal, but in all other respects plainly involved the essence of the plaintiff's invention. A bare majority of the court held the question of infringement to be one of fact for the jury, saying:

> "Where form and substance are inseparable, it is enough to look at the form only. Where they are separable; where the whole substance of the invention may be copied in a different form, it is the duty of courts and juries to look through the form for the substance of the invention—for that which en·titled the inventor to his patent, and which the patent was designed to secure; where that is found, there is an infringement; and it is not a defence, that it is embodied in a form not described, and in terms claimed by the patentee."

As I construe the patent in this case, form and substance are insep-.arable. As already indicated, I cannot read the patent, with its re-peated assertions that the concave upper face must lie "entirely below a plane passing through" the three points, in connection with the specification and the drawings, without regarding that form as of the very essence of the improved function that the patentee contended his improved heel performed. It hardly need be pointed out that the doctrine stated in these two cases has been pretty carefully limited by the courts in other cases. Compare McClain v. Ortmayer, 141 U. S. 419, 12 Sup. Ct. 76, 35 L. Ed. 800; State Bank of Chicago v. Hillman, 180 Fed. 732, 736, 104 C. C. A. 98; Long v. Pope Mfg. Co., 75 Fed. 835, 839, 21 C. C. A. 533.

[14] Nor is this a case to which the doctrine invoked by the plaintiff's counsel that "a patent should be construed, when it can be so con-

strued, to cover the entire inventive thought of the patentee" has any proper application. See American Shoe Co. v. Hoadley (D. C.) 222 Fed. 327; same case on appeal (C. C. A.) 227 Fed. 90. Compare Malignani v. Jaspar Marsh Co. (C. C.) 180 Fed. 442. The construction here adopted does not "strike down the plaintiff's patent." It leaves it vital, operative, commercially valuable for all purposes fairly covered by the patentee's own language. What the plaintiff is really attempting to do is to extend its field of monopoly by unwarranted construction into a field which the language of the patent itself shows was in the prior art, and which the plaintiff did not by his patent even claim. He seeks to get much more than his "entire inventive thought."

Indeed, if the straight-edged heel is the equivalent of the curved-edge heel, it is very difficult to see what limit is to be placed on the plaintiff's claim of monopoly. Where does it stop? What heel manufacturer is safe, however inferior such manufacturer's product may be? At any rate, as I consider the argument and brief of plaintiff's learned counsel, I am utterly unable to form any judgment as to what limit he sets upon his client's claim of monopoly in the field of resilient heels having any approximation to the concavo-convex form. His contention that straight-edge heels are in patent law the equivalent of curved-edge heels drives him to the extraordinary proposition that "after all, a straight line is an arc of a circle whose center is at infinity." We are not now dealing with infinity, but with a very finite, simple, practical thing—the heel of a shoe.

His doctrine would make a patent an undefined and indefinable monopoly. No layman or lawyer, reading it, could form any reasonably safe and intelligent concept of its scope and meaning.

[15, 16] Finally, the plaintiff's counsel contends that the defendant here is estopped from denying infringement because it is alleged to have participated in certain litigation in the Sixth Circuit, involving the validity and infringement of the patent, in which "default decrees" were entered. Assuming that the present defendant participated in suits brought in other districts against its jobbers, and in that litigation advised its jobbers to submit to decrees pro confesso, and that the defendant paid the damages or profits, but did not actually participate in any trial of the case on the merits as to infringement, there is, as I understand the law, no estoppel. Of course, if the defendant here had actually made a defense in another court, the final decree in that court would be res adjudicata here; but I know of no case in which a so-called default decree has been held to be an estoppel to strangers to the record. Compare Stromberg Motor Device v. Zenith Carbureter Co. (D. C.) 220 Fed. 154; Westinghouse Co. v. Jefferson Co. (C. C.) 128 Fed. 751.

[17] That the defendant might have had its day in court elsewhere on the question of infringement is immaterial. The fact that in the other litigation it was neither made a party defendant, nor chose, by assuming with the assent of the real defendant, to take control of the litigation and to try the merits, in my view concludes the matter.

The result is that the motion must be granted, and, for want of jurisdiction, the bill dismissed.