## UNITED STATES RUBBER CO. v. I. T. S. RUBBER CO.

(Circuit Court of Appeals, Seventh Circuit. January 2, 1923. Rehearing Denied March 8, 1923.)

No. 3132.

1. **Patents ⬅328—Reissue 14,049, for rubber heel lift, held not infringed.**

The Tufford reissue patent, No. 14,049, for a rubber heel lift, as distinguished from the prior art, exemplified by the Nerger patent, No. 661,129, is limited to a lift the upper surface of which is concave on all cross-sections, and is not infringed by one which, when in normal shape, is not concave on the longitudinal line, through the center of the breast, but the upper surface of which on such line is lower at the breast than in the center.

2. **Patents ⬅288—Suit for new infringement by defendant of same patent may be brought in district different from first suit.**

Judicial Code, § 48, (Comp. St. § 1030), does not compel a complainant to bring a second suit against a defendant for an alleged new infringement in the same district as the former suit, where jurisdiction of defendant cannot be obtained in that district, except by consent.

3. **Patents ⬅327—Independent suit may be maintained for new infringement by defendant of same patent.**

While a complainant may obtain relief for an alleged new infringement by defendant of the same patent by filing a supplemental bill in a former suit, complainant is not compelled to pursue that remedy, but may bring an independent suit.

Appeal from the District Court of the United States for the Eastern Division of the Northern District of Illinois.

Suit in equity by the I. T. S. Rubber Company against the United States Rubber Company. Decree for complainant, and defendant appeals. Reversed.

For opinion below, see 278 Fed. 975.

Frederick P. Fish, of Boston, Mass., for appellant.

Chas. R. Brown, of Chicago, Ill., for appellee.

Before BAKER, Circuit Judge, and GEIGER and LINDLEY, District Judges.

LINDLEY, District Judge. Appellant, defendant below, appeals from a decree finding that appellant has infringed upon reissue letters patent issued to John G. Tufford, assignor of appellee, plaintiff below, on January 11, 1916, for improvements in resilient heels, No. 14,049, particularly as to claims Nos. 5 to 9 thereof, both inclusive. The so-called heel involved is a "lift" of rubber, suitable for attachment to a leather heel or part heel of a shoe. The appellant has marketed, subsequent to its prior litigation with appellee, hereafter mentioned, a rubber lift for similar use, and has attempted to justify same under the prior art established by the invention of, and granting of letters patent to, Frederick Nerger, November 6, 1900, No. 661,129.

[1] In a prior suit between the same parties in the District Court for the Northern District of Ohio, afterwards affirmed by the Circuit Court of Appeals for the Sixth Circuit (U. S. Rubber Co. v. I. T. S.·

⬅For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

Rubber Co., 260 Fed. 947, 171 C. C. A. 589), the validity of the Tufford patent as distinguished from the prior art as exemplified by the Nerger patent, was established, and the title of appellee to the Tufford patent thereto adjudicated. Under well-known principles, the decision in those cases, followed by the decree of the District Court, in pursuance of the mandate of the Circuit Court of Appeals, is an adjudication of all controversies then properly before the court binding upon both parties hereto. It follows, therefore, that the distinction between the Tufford patent and that of Nerger there pointed out, and the consequent validity of the Tufford patent, and appellee's title thereto, are, for all purposes involved in this litigation, adjudicated and beyond question. Moreover, the Circuit Court of Appeals in the case cited adopts, as a part of its opinion, all of its opinion in the case of Fetzer & Spies v. I. T. S. Rubber Co., 260 Fed. 939, 171 C. C. A. 581, and such part of the District Court opinion in the last-mentioned case as does not conflict with its own opinion. The District Court opinion in the latter case is to be found at 260 Fed. 941. Consequently, it is necessary to refer to all of the three cases in order to determine the reasons for, and the full effect of, the court's adjudication.

In U. S. Rubber Co. v. I. T. S. Rubber Co., 260 Fed. 947, 171 C. C. A. 589, the court found that the lift then being manufactured by the present appellant infringed upon the Tufford patent. Consequently the pertinent question now before the court is whether the appellant has substantially differentiated the lift now complained of by appellee, marketed by it subsequent to the decision of that case, from the lift made by it, then before the court, and, if so, whether said differentiation is sufficient to place the present lift within Nerger, or leave it within Tufford, with the lift made by appellant then before the court.

The Tufford heel, as defined in claims 5 to 9, both inclusive, of the patent as adjudicated by other courts, and as demonstrated by the exhibits, is a segment of a hollow sphere, in the shape of an ordinary shoe heel, concavo-convex, both longitudinally and laterally upon any cross-section, with a point of depression in the face at or near the center thereof with the entire attaching face lying below a plane passing through the three points—the corners of the breast and the high point at the rear of the heel causing it to be called, loosely speaking, saucer shaped. Its advantage lies in the fact that, because of the natural tendency of rubber to return to its normal shape, upon every attempt to alter that shape it will, when attached to the heel of a shoe and nailed thereto, at the center, and thereby flattened, by gripping the edges, in its attempt to regain its spherical shape, produce a close fitting joint with the leather, so that no space or crevice is left into which water, snow, or dirt might otherwise work its way. Manifestly, the greater the angle of the arc of the circle of the lift, when first brought into contact with the heel, the greater the gripping force of the edge of the lift, when the latter is fixed flat upon the heel. From the point of depression at the center, the face of the lift curves upward in all directions, so that all parts of the edge of the face have the full effect of this gripping power, when the lift is flattened against the shoe heel.

The Nerger heel, however, is not concavo-convex both longitudinally and laterally, but is concavo-convex laterally. Instead of having its lowest point at the center with the face curving upward toward the breast and in all other directions, so as to have a strong gripping power at the breast, as well as at all other points, it has its lowest point at the breast. From the central point of the breast to the center of the face of the lift, is almost, if not quite, a horizontal straight line, and from the center to the rear of the lift to either side, the face is curved upward in the arc of a circle furnishing a gripping power at every point of the edge of the face when flattened, except at the breast, where there is, at least theoretically, no gripping power, because of the shape of the lift. We are now speaking of the Nerger lift as it appears, from the exhibits offered, to have been manufactured. By a reference to the letters patent we find this language in the description and claims:

"My invention relates to a construction of rubber heel lift for heels involving a top or lift of concavo-convex form. * * * The objects of my invention are to avoid such central bulging of the lifts as will be incident to securing it near its edge portions only, to flatten down the concavo-convex lift from the center and centrally tack or screw it down, whereby it flattens down. * * * The upper surface of said lift is concave and its under or tread surface is preferably convex. * * * Thus formed the rubber heel lift can be attached to the heel of a boot or shoe by applying its concave surface to such heel and driving nails or tacks through the centrally arranged openings. The nails or tacks when driven home will cause the rubber lift to flatten against the under side of the heel proper. Such flattening or flexing of the heel lift will, of course, place both the rubber (and metal plate) under tension—that is to say, *the lift will have a natural tendency to regain its normal shape and its edges or marginal portions will therefore hug or press tightly against the under side of the heel.* In this way the side portions of the heel lift, though free or unattached, will be held in contact with the heel proper and there will be no danger of a falling away or splitting off of said lift at its edges. The central arrangement of the tack holes permits the lift to be flattened out and securely attached at its central portion and, together with the *dished* or *curved* form of the rubber, renders it unnecessary to make provision for attaching the side or marginal portions of the heel. What I claim as my invention is: 1. A normally concavo-convex rubber lift for boot and shoe heels, provided with a longitudinally and centrally arranged spring clamping plate embedded in the lift and provided with opening for nails substantially as described," etc. (The parenthesis and italics are ours.)

It would seem, therefore, that there is very plausible ground for the contention that Nerger has anticipated all that Tufford has done. But whether Nerger intended to describe and patent a lift concavo-convex on every cross-section is now immaterial, for the Circuit Court of Appeals for the Sixth Circuit has held that Tufford's patent is valid as against Nerger, and that any doubt about Nerger's lift is removed by what he made—a lift concavo-convex laterally, but not longitudinally. The distinction, manifestly, is close, but the result of the two lifts is that Tufford's, with its concavo-convexity on every cross-section, attains a substantially equal gripping power on every point of the edge of its face when flattened against the heel, while Nerger with his low point at the breast and no curve upwards from the center toward the breast, attained his gripping power upon the rear and sides only and not at all upon the breast. Concerning this distinction the Circuit

Court of Appeals for the Sixth Circuit says (Fetzer & Spies Co. v. I. T. S. Rubber Co., 260 Fed. 940, 171 C. C. A. 582):

"The distinction between the two is fairly well expressed by the statement that Nerger is of concavo-convex form upon lateral cross-sections, while Tufford is of this concavo-convex form also upon longitudinal cross-sections. This advance made by Tufford over Nerger seems very small—in looking forward, it might have been thought unsubstantial; but the actual events seem to demonstrate that it was very important, and we have no doubt that it should be considered to involve invention. * * * The best that can be said of Nerger's patent disclosure is that it is not inconsistent with a lift concavo-convex in longitudinal cross-sections also, and that his lift therefore might not have had that form. This uncertainty was removed by the evidence as to what Nerger did. The lifts which he made and sold were scoop-shaped."

The District Court, whose opinion was embodied in that of the Circuit Court of Appeals, says:

"Nerger's heel lift is described as being of concavo-convex form, but not as being concavo-convex on every cross-section thereof. * * * All the edges are substantially straight, and the deepest part of the concavity is not in the center of the lift, but on the line of its breast."

In the former case between the parties here the Circuit Court of Appeals for the Sixth Circuit said:

"The reissued claims are limited to the precise distinction from Nerger, viz. to a lift concavo-convex in all cross-sections."

There the court found that the lift then being manufactured by the defendant was of substantially the same shape as that of plaintiff, and had the same advantageous features in operation. It had a central point of depression in the face from which the surface curved upward in the arc of a circle to the breast, and did not have its low point at the face of the breast.

The material question now is whether the lift made by the defendant, now appellant, since the litigation, has been so changed as to avoid infringement, in other words, so changed as to be included within the prior art of Nerger as defined in the Sixth Circuit. That there has been a substantial change in the lift of the defendant is not questioned. The District Court found that there had been such a change. It said:

"To describe in a general way, for the purposes of this opinion, the defendant's rubber heel lift involved in the former suit, it is perhaps sufficient to say, that its upper side edges were constructed in the same plane as the rear and upper breast corners of the lift, and that its attaching face was concave in the general sense of the term, with *its lowest area centrally disposed. The upper attaching surface of the defendant's heel, as then made, from the center thereof to the breast was on an ascending line.*"

In describing the new lift it said:

"In March, 1920, the defendant placed upon the market a new rubber heel lift, * * * which may be said to be characterized by the fact that the central longitudinal line along the attaching face of the lift is in the form of an arc of a true circle, the lowest point of which is at the center of the breast edge. * * * In the largest of defendant's heels the low spot at the center of the breast is $17/_{64}$ inches lower than the upper rear edge, while in the smallest heels there is $3/_{32}$ of an inch difference between these two points, such measurements being taken when the lift is held with the plane of the

rear edge, and breast corners in a horizontal position. The breast end of the upper longitudinal center line of the attaching face is approximately $1/15$ of an inch below the center of such line in the largest of defendant's heels and $1/54$ of an inch below the center of such line in the smallest."

It is apparent, therefore, from the findings of the court below, that there has been a substantial change in appellant's lift, whereby it has shifted its low point from a centrally disposed spot to the breast, and, instead of the line of the surface of the face from the center of the lift to the breast being an ascending one, it has become a descending one. Consequently there can be theoretically no gripping power of the lift at its breast when attached to a heel, for there is absence of any upward curves in the rubber which would cause it constantly to attempt to regain its normal shape when flattened against the heel. As a physical fact it would be impossible for the gripping power at the breast which gives Tufford his patent over Nerger, to exist in appellant's present heel. Its heel clearly comes within the description and claims of Nerger as hereinbefore set forth and contains no features not included in Nerger as made, except that in Nerger the line from the center to the breast is horizontal and in appellant's lift it is still further away from the ascending line of Tufford and is a descending line. Manifestly, it is even more clearly distinguishable from Tufford than Nerger. Concerning a lift shaped similarly to that of the appellant, specimens of which are in evidence in this case, the Circuit Court of Appeals for the Sixth Circuit said (Tee Pee Rubber Co. v. I. T. S. Rubber Co., 268 Fed. 250):

"We do not overlook that Nerger's upper central longitudinal line, from center to breast, is horizontal, while the T. P. is curved; but that is immaterial, as it is a downward curve—not upward—and so is even further away from Tufford than Nerger is. If Nerger is to be distinguished, because horizontal, the T. P. is yet more to be distinguished, because more than horizontal. There is no escape from the conclusion that the T. P. lifts do not infringe those claims of the patent which call expressly for the concavo-convex form on every line of cross-section."

We agree with this statement, and believe it wholly applicable to the appellant's lift now under consideration.

The District Court here, though it found the shape of the appellant's lift to be as set forth above, was led to its conclusion of infringement, apparently by the fact that when the appellant's lift is tipped slightly from the breast, or, as it is claimed, by reason of the location of its center of gravity, tilts itself slightly when placed freely on a horizontal surface, it holds water, in other words, becomes a saucer instead of a scoop. Manifestly the same is true of the Nerger heel or the Tee Pee heel, above mentioned. This is easily seen from the cross-section drawings of each of these heels, made by the court and inserted in its opinion in the case last cited. Any scoop becomes, to a degree, saucer-shaped or dish-shaped, when tilted sufficiently, and will hold water. In our opinion the error of the District Court in drawing its conclusion of infringement from this fact, lies in denying full force to the proposition that the form and method of operation of these heels are to be tested when in the position they are intended to occupy, with the edges of the face in contact with the leather heel

to which it is to be attached. We agree fully with the holding of the Circuit Court of Appeals for the Sixth Circuit, when it says (Tee Pee Rubber Co. v. I. T. S. Rubber Co.):

"They are shown in each case as they will be * * * when the lift is placed up against the horizontal bottom of the heel (indicated by the dotted line a a) ready for attachment, but before applying any distorting pressure."

In the earlier case it said:

"The true test of whether this was concave was to ascertain whether, when it was disposed in the right relation to the plane of the bottom of the heel, placed horizontally, there was a low spot."

The words "saucer" and "scoop" are not strictly applicable to the two types of lifts, unless they are used to describe the surface of the lift when in contact with the heel. Nerger must have had such position in mind, when he described his lift with an equally descriptive word "dished" or "curved."

It is contended that one distinctive feature of the Tufford lift is that it produces "an intensive sealing" when contorted into flatness, and that appellant's lifts do the same, and therefore must have the same result in operation on a shoe heel, and therefore infringe. We assume that the terms as used are intended to express the pressure of the atmosphere against the exterior of a body that has a vacuum in its interior. Admittedly, when appellee's lift is flattened against a perfectly smooth surface, so smooth that, when the face of the rubber comes in close contact with it, no air can enter between the two surfaces, a vacuum exists in the interior, so that there is a resulting suction on the interior, and air pressing on the exterior. This is due to the air pressure, and to nothing else. It may result from a scoop-shaped object as well as a saucer-shaped one. Its existence all depends upon the existence of a vacuum.

Entirely different, in its source and cause, in our opinion, is the advantage of the Tufford lift's gripping power. That is due to the tendency of curved rubber to regain its shape when flattened. It certainly cannot be contended that a vacuum can be created by any of these lifts upon ordinary leather heels. It is the gripping power on all its edges that distinguishes the Tufford from the Nerger and appellant's heels, not its suction, which is valueless as an operative element. Such suction or sealing may or may not be a symptom of Tufford's lift. It may or may not be a symptom of appellant's lift. Concerning this precise point, the Circuit Court of Appeals for the Sixth Circuit, upon rehearing, when it was contended that the court had erroneously found as a fact that the Tee Pee heel had no such sealing qualities, said (Tee Pee Rubber Co. v. I. T. S. Rubber Co.):

"Upon application for rehearing, counsel for plaintiff now challenge the accuracy of the observation and experiments recited in the opinion, and insist that they can, by experiment in open court, if permitted a reargument, demonstrate that the Tee Pee lifts will adhere by suction and will have this intensive sealing, even at the center of the breast edge. Since counsel have not had the opportunity, we must, in passing on the rehearing petition, assume that they would be able to succeed in their proposed experiments; and, if what was said in the opinion on this subject were vital to the conclusion reached, a rehearing should be permitted. However, we do not regard it as

vital. The fact remains that the upper surface of the Tee Pee lift is not concave, in the sense in which that word was used by Tufford in order to distinguish from Nerger and get his patent allowed. If it may be true that sufficiently skillful manipulation of the Tee Pee lifts will make them, for a time and in a degree, act like the Tufford lifts, and if it should therefrom be inferred that this distinction in shape between Tufford and the Tee Pee is immaterial, the further inference will be inevitable—since the Tee Pee must be classed with Nerger as to this shape—that there was no substantial distinction in this respect between Nerger and Tufford, and that Tufford and the Patent Office were wrong in the theory upon which alone issue of the Tufford patent was procured."

The same court said in Fetzer & Spies Leather Co. v. I. T. S. Rubber Co.:

"We do not regard this suction as of decisive importance in itself, because, after one or two leather lifts have been removed, the roughness of the leather and the overlapping by the rubber would make it doubtful whether the suction adherence would be of much practical use."

"Suction is not the operative element, but is rather the symptom." Tee Pee Rubber Co. v. I. T. S. Rubber Co., supra.

The finding of the District Court that appellant's heel has its lowest point at the breast or edge differentiates the lift from Tufford as a structural fact and is a conclusive legal differentiation. Otherwise, as held by the Circuit Court of Appeals for the Sixth Circuit, Tufford is in the same field as Nerger, and Tufford has been anticipated by the prior art of Nerger.

This distinction between the Tufford heel and that of appellant, as well as that of Nerger, can be otherwise stated. The appellee's lift, being in the nature of a segment of a hollow sphere, with a central point of depression when pressed down in the center, forces all its edges into firm contact with the shoe heel, with a substantial pressure exerted on all sides of the edges of the heel, a pressure, which is due entirely to the natural tendency of rubber to resume its former shape. This pressure is substantially as great at any one point as at any other, including the breast of the heel. On the other hand, it is apparent that in the appellant's lift, where the low point is at the breast of the lift, there can be no equally great pressure at the breast, for at that point there is no substantial angle between the face of the lift and the heel to which it is attached, to cause any degree of pressure at the breast. Therefore, when appellant's lift attempts to follow its natural tendency to resume its normal shape, the gripping forces cannot as a physical fact be exerted with the same strength at the breast as at the sides, edges and rear of the heel. In other words, the grip of the shoe heel by the lift of the appellant at the breast cannot, as a physical fact, exist in any more than a very slight and immaterial degree.

It is this different structural fact, with resulting different action in operation at the breast, that, in our opinion, distinguishes appellant's lift and the Nerger lift from appellee's lift, and which the Circuit Court of Appeals for the Sixth Circuit held distinguished the Tee Pee lift from the appellee's lift. That court held that the distinction rests upon the fact that the Tufford lift is limited to the precise distinction from Nerger's of being a lift concavo-convex in all cross-sections.

United States Rubber Co. v. I. T. S. Rubber Co., 260 Fed. 947, 171 C. C. A. 589.

We cannot agree that the presence of the spring plate inbedded in Nerger's heel was the distinguishing feature between his heel and Tufford's under claims 5 to 9. We agree with the other courts in that respect. Hill Rubber Co. v. I. T. S. Rubber Co. (C. C. A.) 269 Fed. 270:

"We have so far declined to let our findings of invention by Tufford rest on the absence of Nerger's plate."

Our conclusion brings us in line with the holdings of other courts upon this patent and to the belief that the court below was led into a fallacious line of reasoning by applying an erroneous test. The fact that when the appellant's heel is tilted, or when its center of gravity causes it to tilt when resting on its tread surface, it thereby acquires some of the qualities of a saucer and will hold water, at least theoretically, does not necessarily lead us to the conclusion that thereby appellant's lift ceases to follow Nerger and follows Tufford. The Circuit Court of Appeals for the Sixth Circuit apparently found the same facts to exist with reference to the Tee Pee heel. That court described this test as a "natural, but deceptive, test," and said that, "when the test is corrected to bring it to a common standard," the lowest spot is at the breast and not centrally disposed, thus preventing in the attachment of the lift any appreciable gripping force at the breast. Having found that the lift now being marketed by appellant has been materially changed from that before the court in the Sixth Circuit and is not concavo-convex on every cross-section, but only laterally, that it is not depressed at the center, but has its lowest point at the breast, and that it preserves such shape when first placed in contact with the leather heel, the court should conclude that the appellant's lift followed Nerger and not Tufford.

[2] The appellant contends that the District Court and this court have no jurisdiction on the ground that the act of March 3, 1897 (Judicial Code, § 48 [Comp. St. § 1030]), does not permit two suits to be brought in two districts under the same patent against the same defendant, and because it must be established that the appellant has committed acts of infringement within this district, a proposition alleged to be negatived by the pleadings and exhibits attached to plaintiff's interrogatories.

We do not consider this contention well founded. True it is that another suit between the same parties has been prosecuted to a final decree in the Sixth Circuit, but it is undisputed that in that litigation the appellant entered its appearance and consented to the jurisdiction of the court, and that otherwise that court would not have had jurisdiction because the defendant had no place of business, and was not doing business, within that district. The law does not compel the plaintiff to begin a second suit upon an alleged new infringement in the same jurisdiction as that of the original suit, where no jurisdiction of the defendant can be obtained except by its consent, which it is not bound to give. We agree with the decision of the District Court in its construction of that statute.

[3] It is suggested that the present suit might have been prosecuted by filing a supplemental bill in the district where the original suit was instituted. Without determining that point, we are of the opinion that the law does not require the plaintiff to pursue its remedy by filing a supplemental bill, but permits it to file an independent suit.

Under the second reason for the alleged lack of jurisdiction, it is apparent, as the court below held, that to pass upon that point would require a hearing upon the merits.

For the reasons appearing, the decree of the District Court will be reversed, with directions to enter a decree finding no infringement and dismissing the bill for want of equity, at the costs of the plaintiff.