## I. T. S. RUBBER CO. v. MALAKOFF et al.

(District Court, W. D. Pennsylvania. August 9, 1923.)

### No. 612.

Patents ⟨⟩328—Tufford reissue, No. 14,049, for rubber heel, held valid but not infringed.

Tufford reissue patent, No. 14,049, for rubber heel, *held* valid but not infringed.

In Equity. Suit by the I. T. S. Rubber Company against Joseph Malakoff and another, trading as the Penn State Leather Company. Decree for defendants.

Winter, Brown & Critchlow, of Pittsburgh, Pa., and F. O. Richey, of Cleveland, Ohio, for plaintiff.

Horace Van Everen and Alfred H. Hildreth, both of Boston, Mass., for defendants.

SCHOONMAKER, District Judge. This action was heard on bill, answer, and proofs. It is a suit in equity, brought by the I. T. S. Rubber Company versus Joseph Malakoff and Leo Ferber, trading as the Penn State Leather Company.

Defendants are jobbers, having a place of business in the city of Pittsburgh, dealing in leather, rubber heels, and other shoe findings.

The plaintiff alleges that the defendants have infringed its patent, reissue No. 14,049, granted on the application of John G. Tufford, for improvements in rubber heels, on account of defendants' sale of certain rub-

ber heels known as the Panther Rubber Company's "scoop heel," and in addition the plaintiff charges the defendants with unfair competition in trade because of alleged similarity of boxes or cartons in which the heels sold by the defendants are put up for market to the boxes or cartons in which heels of the plaintiff's manufacture are put up for sale.

The defendants deny the validity of the reissue patent No. 14,049 (1) because of the lack of invention over the disclosure of Nerger patent, No. 661,129, and the Ferguson patent, No. 638,228; and (2) because the reissue is not for the same invention patented and sought to be covered by the original patent of Tufford.

The defendants further deny the infringement of the patent, claiming that the heels which they are marketing do not infringe any of the claims of Tufford patent, 5 to 9, inclusive, which are sued upon in this action. And the defendants deny any unfair competition in the matter of the use of boxes or cartons containing rubber heels that are placed upon the market by them.

First, as to the validity of the plaintiff's patent. We are of the opinion that that is not now an open question, inasmuch as the Circuit Court of Appeals of the Sixth Circuit (United States Rubber Co. v. I. T. S. Rubber Co., 260 F. 947, 171 C. C. A. 589) has held that the Tufford patent is valid, as distinguished from the prior art exemplified by the Nerger patent. While in the present action there are not the same patents as were involved in the action in the United States court, yet the very question involved here was at issue in the Circuit Court of Appeals of the Sixth Circuit. We believe that the ordinary rule of stare decisis would prevent us now in ruling as to the validity of the Tufford patents. We may say, however, that, had it not been for the decision of the Circuit Court of Appeals, Sixth Circuit, sustaining the validity of the Tufford patent over the Nerger, we would have held, from the evidence in this case, that the Nerger had anticipated all that Tufford claimed, as was suggested by the Circuit Court of Appeals for the Seventh Circuit, in the case of United States Rubber Co. v. the I. T. S. Rubber Co., 288 F. 786 (a copy of the opinion in this case offered in evidence as the Defendants' Exhibit K).

We might further state, with reference to the alleged invalidity of the Tufford patent, that there have been a number of cases before the different United States courts where the Tufford patent has been called in ques-

tion, and in none of them has the validity of the patent been denied.

We therefore conclude that for the purpose of this action the Tufford patent is valid. As to the alleged infringement, the rubber heels which are alleged to infringe the Tufford patent comprise Plaintiff's Exhibits 3 and 4, and 7 to 17, inclusive. They are the heels marked "Panther Scoop," and bear the representation of a grocer's hand scoop. In this connection it may be noted that the defendants' sales of these said alleged infringing heels have only been 10 gross, namely 120 dozen, the defendants having purchased from the manufacturers but a single order.

From a careful consideration of the evidence offered in this case from the experiments made in the presence of the court, we have arrived at the conclusion and find, as a matter of fact, that the rubber heels sold by the defendants do not infringe the Tufford patent, and that they more closely resemble the prior art as exemplified by the Nerger patent. We find, as a matter of fact, that the defendants' heels differ in several essential particulars from the plaintiff's patent heels, not only in shape and form, but in operation and results. Defendants' heels are similar to the Nerger heels, in that they are a true scoop, or low breast shape. There is no raised or upwardly curved breast as on the plaintiff's patented heel. As a result, when the defendants' heel is depressed at the center nail hole, as by nailing, the breast edge does not come into contact even when the center nail is driven home. In the plaintiff's heel, on the other hand, pressure at the center nail hole, as by driving the nail, brings the breast edge in tight contact before such nail is driven home or the center of the attaching face of the heel is brought into contact with the shoe heel. Another characteristic difference between the defendants' heel and the plaintiff's heel is in the side edges of the heel. In the case of the alleged infringing heels, these side edges are in the same plane with the breast corners and the rear edge, so that, when the heel is placed upon a plane surface, there is continuous contact from one breast corner along the side, the rear edge, and the other side to the opposite breast corner. As opposed to this, the plaintiff's patented heels have dropped side edges; that is, the side edges are curved and lie below a plane passing through the breast corner and the rear edge, when it is held in its normal position with the attaching face uppermost.

Another distinction between the heels in question in this case is with regard to the location of the nail holes, particularly those nearest the breast. In the case of the defendants' heels, those nail holes are relatively close to the breast edge, and we should judge, on inspection of the flat heels of the O'Sullivan type offered in evidence, they are as close, if not closer, than the nail holes in corresponding size of the O'Sullivan flat heels. In the plaintiff's heels, these are much farther from the breast edge, being approximately twice as far as in defendants' heels of corresponding size. The defendants' heels, lacking the upward curvature at the breast to give the intensive sealing by means of the bending or stressing of the rubber, secure the commercially tight joint in the same method that it is secured in the flat heel, namely, by breast nailing; whereas in the plaintiff's heel an intensive sealing at the breast edge is secured by bending and stressing of the rubber.

The heels which are alleged to infringe the plaintiff's patent in this case very closely resemble the heels which the Circuit Courts of Appeals of the Sixth and Seventh Circuits and the District Court of Massachusetts have held do not infringe the Tufford patent. The decisions of the Courts of Appeals of the Sixth and Seventh Circuits, Tee Pee Rubber Co. v. I. T. S. Rubber Co. (C. C. A. 6th Circuit) 268 F. 250; U. S. Rubber Co. v. I. T. S. Rubber Co. (C. C. A. 7th Circuit) 288 F. 786 (certified copy offered in evidence as Defendants' Exhibit K); I. T. S. Rubber Co. v. Tee Pee Rubber Co. (C. C. A. 6th Circuit) 288 F. 794 (certified copy offered in evidence as Defendants' Exhibit L); I. T. S. Rubber Co. v. Essex Rubber Co. (D. C.) 270 F. 593 (the opinion offered in evidence as Defendants' Exhibit J).

The decisions of the Courts of Appeals of the Sixth and Seventh Circuits have limited the Tufford reissue patent in suit to a construction in which the breast edge is not the lowest portion of the attaching face, but is raised a substantial distance above the lowest point, which is back nearer the center of the heel, so that an upward curve is formed at the breast edge which, when the heel is flattened out upon the shoe, gives an intensive sealing at the breast. Such a construction of the patent excludes the defendants' heels.

In the District Court of Massachusetts, the Tufford patent is further limited to heels having dropped side edges; that is, one in which the upper side edges lie below a plane passing through the breast corners and the rear edge. This construction also excludes the heels now alleged to infringe. As construed by these courts, the Tufford heel, as defined in its claims 5 to 9, inclusive, is a segment of a hollow sphere, in the shape of an ordinary shoe heel, concavo-convex, both longitudinally and laterally upon any cross-section, with a point of depression in the face at or near the center thereof, with the entire attaching face lying below a plane passing through the three points—the corners of the breast and the high point at the rear of the heel—causing it to be called saucershaped. The Nerger heel, however, is not concavo-convex both longitudinally and laterally, but is concavo-convex laterally, and, instead of having its lowest point at the center with the face curving upward toward the breast and in all other directions, so as to have a strong gripping power at the breast, as well as at all other points, it has its lowest point at the breast.

The defendants' heels are of this Nerger type, and, in conformity with the ruling of the Circuit Courts of Appeals, Sixth and Seventh Circuits, and the District Court of Massachusetts, we hold that the defendants' heels do not infringe those of the plaintiff in this case, for the reasons so fully and carefully set out in the opinions of the Circuit Courts of Appeals and the District Court of Massachusetts above referred to.

On the question of unfair competition, the plaintiff offers in evidence certain boxes of its own manufacture in which the "scoop heels" are put up for market, and certain boxes or cartons in which the defendants' heels are marketed. We find, as a matter of fact, that there is no such similarity between the two boxes that there is any chance of the public being deceived and led to buying heels of the defendants' manufacture, under the supposition that they were buying heels manufactured by the plaintiff. In the case of the Circuit Court of Appeals (I. T. S. Rubber Co. v. Tee Pee Rubber Co. (C. C. A.) 288 F. 794, copy offered in evidence as Defendants' Exhibit L), there was held to be an unfair competition, but it was so slight that the court would not even assess any damages. It appears in the evidence in this case that the ordinary consumer of these rubber heels would be the cobbler or other professional shoe repairer who would be a judge of the type of boxes and would certainly understand their origin.

Personally, we do not see how there is any opportunity for deception in the matter of boxes; and this court finds, as a matter of fact, that there has been no unfair com-

petition practiced by the defendants in this case with reference to cartons or boxes complained of by the plaintiff.